UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| WILFRED BRADLEY | : | CIVIL ACTION NO. 6:19 cv 00056 |
| VERSUS | : | JUDGE ROBERT R. SUMMERHAYS |
| MOUNTAIN LAKE RISK, U.S. XPRESS, INC., AND | : | MAGISTRATE PATRICK J. HANNA |
| GEORGE FIORUCCI | : | JURY DEMAND |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION<br>*IN LIMINE* AND TO STRIKE</u>

NOW INTO COURT, through undersigned counsel, come defendants, Mountain Lake

Risk Retention Group, Inc., and U.S. Xpress, Inc. (collectively, "<u>Movers</u>"), who have moved this

Honorable Court for a Motion *in Limine* and/or to Strike, and, in support thereof show, as follows:

### I.      RELIEF SOUGHT

Defendants seek an order prohibiting, excluding and/or striking those categories of

evidence and testimony identified herein.

### II.      LAW AND ARGUMENT

Generally, Rule 26 requires litigants to disclose expert testimony. For treating physicians,

expert testimony is disclosed either pursuant to Rule 26(a)(2)(B), or the more lenient Rule

26(a)(2)(C) standard. Rule 26(a)(2)(B) requires experts retained specifically for litigation to

provide a formal expert report. Rule 26(a)(2)(C) requires the disclosure of non-retained experts to

state the subject matter on which the witness is expected to present evidence under Federal Rules

702, 703, or 705, *and* a summary of the facts and opinions to which the witness is expected to

testify.

*Rule 26(a)(2)(B)*

"[W]here testimony 'consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation,' the testimony is rather than of an expert."[1] "For example, testimony as to causation or as to future medical treatment has been considered the province of expert testimony subject to the requirements of section (a)(2)(B)."[2] "While the Fifth Circuit has not directly addressed this issue, other circuits have held someone may be a witness subject to the lower standard as to portions of his testimony and simultaneously deemed a retained or specially employed expert who is subject to the higher standard as to other portions."[3] "In addition, where physicians' testimony is prepared in anticipation of litigation by the attorney or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like an expert and must submit a report under Rule 26(a)(2)(B)."[4] Finally, "when an attorney refers a physician to a client, the physician crosses the line from a treating physician into the realm of a specially retained expert whose report must be provided."[5]For such experts subject to Rule 26 (a)(2)(B), "the proponent must produce to the other parties an expert report containing his opinions, the facts and data used, any exhibits to be used, the witness's qualifications, other cases in which the expert testified, and a statement of the compensation paid for services."[6]

---

[1] <u>Hooks v. Nationwide Hous. Sys., LLC</u>, No. CV 15-729, 2016 WL 3667134, at *3 (E.D. La. July 11, 2016).
[2] Id. <u>Citing Rea v. Wis. Coach Lines, Inc.</u>, No. 12-1252, 2014 WL 4981803, at *2 (E.D. La. October 3, 2014).
[3] <u>Williams v. State</u>, No. CV 14-00154-BAJ-RLB, 2015 WL 5438596, at *3 (M.D. La. Sept. 14, 2015).
[4] <u>Hooks v. Nationwide Hous. Sys., LLC</u>, No. CV 15-729, 2016 WL 3667134, at *3 (E.D. La. July 11, 2016).
[5] <u>Tolliver v. U-Haul Co. of Texas</u>, No. 2:09 CV 313, 2011 WL 3626328, at *3 (W.D. La. Aug. 17, 2011).
[6] <u>Talbot v. Elec. Ins. Co.</u>, No. CV 17-299-SDD-EWD, 2018 WL 8223433, at *2 (M.D. La. Nov. 19, 2018).

*Rule 26(a)(2)(C)*

The advisory committee note sheds light on the appropriate detail required under Rule 26(a)(2)(C). It clarifies that while Rule 26(a)(2)(B) reports must include the "facts and data" that the expert considered but did not actually use, "the (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present." This clarification communicates two important concepts. There is a meaningful difference in the degree of detail in the factual disclosures required by the two rules – with Rule 26 (a)(2)(C) reports being permitted to omit the disclosure of facts upon which the expert *did not* rely. And, on the other hand, Rule 26(a)(2)(C) does require the disclosure of those facts directly related to the non-retained expert's opinion in summary form. Indeed, as one federal district court acknowledged after a lengthy analysis of Rule 26's guidance, the "summary of facts" provided for in Rule 26(a)(2)(C) "means a brief account of facts – only those on which the expert actually relied in forming his or her opinions – that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice."[7] Medical records cannot serve as a substitute for the summary of facts and opinions to which the witness is expected to testify required by the more lenient standard under Rule 26(a)(2)(C).[8]

### Application to this case and the Treating Physicians.

### <u>Jenson Bergeron, LPC</u>

- Plaintiff failed to provide any Rule 26 disclosures in connection with identifying Mr. Bergeron – the first indication that Mr. Bergeron was a treating expert was circulation of medical reports dating back to January 23, 2021 on July 1, 2021.

---

[7] <u>Id</u>. <u>See also</u> <u>United States v. King</u>, No. 4:19-CV-01418, 2020 WL 10223325, at *3 (S.D. Tex. Oct. 29, 2020); <u>Tolan v. Cotton</u>, No. CIV.A. H-09-1324, 2015 WL 5332171, at *6 (S.D. Tex. Sept. 14, 2015)

[8] District courts reject the notion that a disclosure solely of medical records is sufficient as a summary of the facts and opinions to which the witness is expected to testify. <u>Williams v. State</u>, No. CV 14-00154-BAJ-RLB, 2015 WL 5438596, at *4 (M.D. La. Sept. 14, 2015).

- Even if the untimely identification of Mr. Bergeron was found not to violate Rule 26, the circulation of his treatment records does not satisfy Rule 26's requirements for disclosures for treating physicians. Indeed, medical records cannot serve as a substitute for the summary of facts and opinions to which the witness is expected to testify required by the more lenient standard under Rule 26(a)(2)(C).[9]

Testimony and evidence associated with Plaintiff's treatment and care by Jenson Bergeron, his licensed professional counselor, concerning alleged psychological maladies must be excluded on no less than three independent bases.

### NO RULE 26 DISCLOSURES, AND EXISTENCE DISCLOSED JULY 1, 2021

Plaintiff failed to provide *any* Rule 26 disclosures in connection with *identifying* Mr. Bergeron – the first indication that Mr. Bergeron was a treating expert was circulation of reports dating back to January 23, 2021 on July 1, 2021.[10] Even if the untimely identification of Mr. Bergeron was found not to violate Rule 26, the circulation of his treatment records does not satisfy Rule 26's requirements for disclosures for treating physicians. Indeed, medical records cannot serve as a substitute for the summary of facts and opinions to which the witness is expected to testify required by the more lenient standard under Rule 26(a)(2)(C).

### UNTIMELY TENDER OF TREATING PHYSICIAN REPORTS

Plaintiff has failed to abide by the requirement that it tender to Defendants' treating physician reports within five days of receipt. By Plaintiff's own admission in the cover letter circulating Mr. Bergeron's "reports" such reports were received by Plaintiff on June 18, 2021; they

---

[9] See supra n. 8.
[10] Indeed, the very first time Defendants were advised of Plaintiff's treatment with Mr. Bergeron was on July 1, 2021 when medical records from Mr. Bergeron were circulated to Defendants. Specifically, that cover letter from Plaintiff's counsel purported to enclose "Jensen Bergeron's reports dated 1/26, 2/23, and 3/24/21 (received June 18, 2021)," and "Jensen Bergeron's CV." Mr. Bergeron's "reports" were progress notes dating back as early as January 26, 2021. Mr. Bergeron's CV was not enclosed.

were circulated to Defendants thirteen days later. Finally, it is notable that Defendants requested an independent medical examination from Plaintiff's counsel concerning Plaintiff's alleged psychological maladies based upon a reference in another expert's report of referring Plaintiff to a counselor. That request was made in May of 2021, and Plaintiff's counsel promptly advised Plaintiff was not undergoing treatment in this field and would not present for an independent medical examination. Under these circumstances, there is no reasonable dispute that Plaintiff should be precluded from using Mr. Bergeron to provide evidence on a motion, at a hearing, or at trial. The failure to identify Mr. Bergeron cannot be construed as substantially justified or harmless under the circumstances and he must be stricken.[11]

### Dr. David Weir

- Plaintiff's counsel's office requested Dr. Muldowney refer Plaintiff to Dr. David Weir in connection with this case,[12] triggering the requirement that Dr. Weir's disclosures satisfy Rule 26(a)(2)(B).[13]

- Dr. Weir never provided an expert report.

- Dr. Weir's disclosures fall short of those required for a treating physician subject to the more lenient standard under Rule 26(a)(2)(C), as they fail to provide a summary of the facts upon which he bases his opinions,[14] including opinions on medical causation. A summary of those facts would be essential because Plaintiff did not begin treatment for headaches until more than two years post-accident. At a minimum, Dr. Weir should be prohibited upon medical causation and future medical care given the failure to provide compliant disclosures.

- To the extent Dr. Weir's treating physician reports (medical reports) have been produced on a rolling, though at times untimely basis, the production of such documents cannot satisfy Rule 26(a)(2)(B) or Rule 26(a)(2)(C)'s requirements as the disclosure of medical records alone is insufficient to satisfy the requirements of those sections.

---

[11] It is notable that the parties agreed that no new experts would be added to this action other than those previously identified as of November 20, 2020. Doc. No. 44.
[12] Exhibit 1, Referral report.
[13] See supra n. 5.
[14] See Exhibit 2, March 25, 2021 "Summary of Conference" prepared by Dr. Stokes and signed by Dr. Weir.

## Dr. David Muldowney (summary)

- At Dr. Muldowney's deposition on April 28, 2021, he was presented with a "Summary of Conference report" prepared by Larry Stokes, that he had yet to sign. Dr. Muldowney in fact stated he had never seen the document.[15]

- To date, a signed version of this summary of conference has not been provided to Defendants. Instead, Defendants have been furnished untimely treating physician reports in lieu of disclosures. Such reports cannot suffice to satisfy even Rule 26(a)(2)(C).

- The summary of conference report itself, even if it had been signed and disclosed outside of an exhibit in a deposition is insufficient because it would be subject to Rule 26(a)(2)(B) in light of Dr. Muldowney's recommendations outside the scope of his care and expertise. Dr. Muldowney opines upon various matters, including recommendations for Plaintiff's need for physical assistance in the home, such as handyman services, lawn maintenance services, and house cleaning services post-lumbar surgery. In addition, Dr. Muldowney opined that, "Pending Mr. Bradley undergoes ALIF, he may possibly be a candidate for an adjacent level surgery in the future." No factual summary for either of those opinions is provided, thus, even under the more lenient standard, Dr. Muldowney's expert disclosures are insufficient.

- At a minimum, given the failure to comply with the disclosure requirements of Rule 26(a)(2)(C), Dr. Muldowney should be precluded from opining upon causation, and future medical care, including the speculation that Plaintiff "may possibly be a candidate for an adjacent level surgery in the future."

At Dr. David Muldowney's deposition, Plaintiff's counsel presented him with a "Summary of Conference" report that he had yet to read or sign. The "Summary of Conference Report was prepared by Larry S. Stokes, Plaintiff's vocational rehabilitation expert, and Dr. Muldowney testified he had yet to sign it and had never seen it before. To date, an executed "Summary of Conference" report signed by Dr. Muldowney containing the opinions summarized in the deposition exhibit has yet to be disclosed to Defendants. Nevertheless, Dr. Muldowney's opinions, as identified in the Deposition exhibit, must be excluded on several bases.

---

[15] See Exhibit 3, Unsigned Summary of Conference Report.

**POSSIBILITY OF FUTURE SURGERY IS INADMISSIBLE**

Dr. Muldowney's opinion that "[p]ending Mr. Bradley undergoes the ALIF, *he may possibly* be a candidate for an adjacent level surgery in the future," cannot be provided to the jury as, to be admissible, "projected treatment costs must be based on evidence demonstrating the treatment that a plaintiff will probably need, not simply the treatment that he might need."[16] Mere "*possibility*" falls far short of the required standard of probability and flirts with pure conjecture. Similar musings concerning the "possibility" of future surgeries have been deemed too speculative by other Louisiana Federal District Courts.[17]

**RULE 26(A)(2)(B) WAS NOT COMPLIED WITH**

Second, in an April 1, 2021 "addendum" to an earlier February 24, 2021 medical record, Dr. Muldowny opined:

> Based on my review of the records including the ER Record of his initial visit, the patients explanation that the symptoms have been present since the day of the accident but were overshadowed by his neck symptoms, and by the fact he equated the mid back and low back together, it is my opinion that more likely than not, his lumbar issue is related to his automobile accident of 02/14/2018 and therefore his need for lumbar surgery is related to the automobile accident.

This opinion was rendered within the specific context of this case. A case where patient's treating physicians did not perform a lumbar MRI until January 1, 2021 – roughly three years after the accident. More importantly, as this opinion was by Dr. Muldowney's own admission premised upon a review of records outside his course of Plaintiff's treatment, Dr. Muldowney is held to Rule

---

[16] See Robin v. Wks. Marine, Inc., No. CV 17-1539, 2018 WL 10776315, at *1 (E.D. La. Nov. 19, 2018) ("The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expenses will be medically necessary. In order to be admissible, projected treatment costs must be based on evidence demonstrating the treatment that a plaintiff will probably need, not simply the treatment that he might need."); See also Anders v. Hercules Offshore Servs., LLC, 311 F.R.D. 161, 165 (E.D. La. 2015).

[17] See e.g., Id.

26's more stringent standard under Rule 26(a)(2)(B) requiring an expert report. Dr. Muldowney has not provided such an expert report, and thus should be stricken, or, at a minimum, prohibited from opining upon causation and future medical care.

### UNTIMELY DISCLOSED TREATING PHYSICIAN REPORTS GENERALLY

"The Fifth Circuit recognizes that district courts have broad discretion in enforcing their scheduling orders by excluding evidence."[18] As this District Court may recall, Defendants previously filed a motion to continue, or alternatively, a motion *in limine* premised upon the requirements of this Honorable Court's scheduling order that, within five days of receipt, copies of reports of treating physicians are to be furnished to opposing counsel.[19] Specifically, in that case, Defendants were not timely provided with various treating physician reports, including the report of a new treating physician. Before that Motion was adjudicated, the parties resolved the issue by agreeing to continue the trial of this matter to a later date and filed a Joint Motion to Continue the Trial. This District Court cautioned against the practice of providing untimely treating physician reports, stating in the Order granting the Joint Motion to Reset Trial,[20] "[c]opies of Reports of Treating Physicians must be provided to opposing counsel within five (5) days of receipt."[21] Later in this litigation, Defendants were provided Dr. Muldowney's February 24, 2021 treating physician report, containing a new surgical recommendation, on March 22, 2021 under a cover letter dated March 19, 2021. Yet again, the parties worked together to resolve their differences and continued the trial date so Defendants could address this untimely produced report, which contained a new lumbar surgical recommendation.

---

[18] <u>Kitts v. Citgo Petroleum, Inc.</u>, No. 2:07-CV-1151, 2009 WL 192548, at *1 (W.D.La. January 22, 2009).
[19] Doc. No. 42.
[20] Doc. No. 45.
[21] Doc. No. 45.

Now, for a third time, Defendants were provided treating physician reports untimely. Indeed, on July 1, 2021, Defendants were furnished with treating physician reports: (a) dated January 26, 2021, February 23, 2021, and March 24, 2021 from a previously undisclosed treating counselor, Jensen Bergeron (the cover letter suggests these reports were received on June 18, 2021); (b) dated May 21, 2021 from Dr. David Muldowney; and (c) dated June 8, 2021 from Dr. David Weir.[22]  Defendants respectfully submit that the latest set, and any future, untimely disclosed treating physician reports should be excluded as this is the third instance where such reports have not been timely disclosed.

**DR. LARRY STOKES AND JOHN W. THERIOT'S UPDATED EXPERT REPORTS**

On June 2, 2021, Plaintiff forwarded "updated expert reports" from Dr. Larry Stokes and John W. Theriot, Plaintiff's vocational rehabilitation and lifecare planner and economist respectively.[23] These reports contained entirely new sections, such as future medical calculations associated with Plaintiff's previously undisclosed psychological care (Jensen Bergeron, LPC), Dr. Muldowney's opinion Plaintiff could "possibly" require an adjacent level lumbar fusion, and various other modalities associated with future medical care opinions from Plaintiff's physicians. As demonstrated herein, Dr. Muldowney's opinion concerning the "possibility" of an adjacent level surgery in the future is speculation, and inadmissible. In addition, adding a new section to these reports for psychological care recommendations is particularly prejudicial given Plaintiff failed to provide any disclosures for Mr. Jensen Bergeron until July 2021. Simply put, Dr. Stokes and Mr. Theriot's expert reports should be conformed and limited to admissible, timely disclosed expert medical opinions and must specifically have stricken "possible" care.

---

[22] See Exhibit 4, July 1, 2021 Cover letter and treating physician reports submitted *in globo*.
[23] See Exhibit 5, June 2, 2021 Cover letter and updated expert reports submitted *in globo*.

### III.    CONCLUSION

For the reasons stated herein, Movers submit that an order should issue excluding and/or striking those witnesses, categories of evidence, and/or testimony identified herein.

Respectfully submitted,

**The Dill Firm, A.P.L.C.**

*/s/Michael C. Wynne*

BY:    _____
JAMES M. DILL (Bar Roll #18868)
MICHAEL C. WYNNE (Bar Roll #36096)
G. AUSTIN LOVE (Bar Roll #36554)
825 Lafayette Street
Post Office Box 3324
Lafayette, Louisiana 70502-3324
Telephone: (337) 261-1408 Ext. 211
Facsimile: (337) 261-9176
Email: jdill@dillfirm.com
Email: mwynne@dillfirm.com
Email: alove@dillfirm.com
ATTORNEYS FOR DEFENDANTS

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that, on August 20, 2021, a copy of the foregoing, "Defendants' Motions *in Limine* and to Strike" was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants.

Lafayette, Louisiana, this 20th day of August, 2021.

*/s/Michael C. Wynne*
_____
MICHAEL C. WYNNE

-10-