UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **WILFRED BRADLEY** | **CASE NO. 6:19-CV-00056** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **MOUNTAIN LAKE RISK, ET AL.** | **MAGISTRATE JUDGE HANNA** |

## RULING

Before the Court is a Motion in Limine filed by Defendants, Mountain Lake Risk Retention Group, Inc. ("Mountain Lake") and U.S. Xpress, Inc. ("U.S. Xpress").[1] Defendants seek to exclude or limit the testimony of several of Plaintiff's treating healthcare providers, as well as those portions of Plaintiff's expert economist and vocational rehabilitation witness testimony that rely upon any testimony of Plaintiff's healthcare providers that the Court deems inadmissible. Plaintiff Wilfred Bradley opposes the motion and Defendants have filed their reply.[2] For the reasons that follow, the motion is GRANTED IN PART.

### I.
### BACKGROUND

This suit arises out of a motor vehicle collision that occurred on February 14, 2018 between Plaintiff and Defendant George Fiorucci. The parties agree that at the time of the accident, Mr. Fiorucci was in the course and scope of his employment with U.S. Xpress. On January 16, 2019, Plaintiff filed this suit for personal injury and property damages against Fiorucci, U.S. Xpress, and Mountain Lake as U.S. Xpress' insurer, invoking diversity jurisdiction.[3] Trial was originally

---

[1] ECF Nos. 75.
[2] ECF Nos. 83, 89.
[3] ECF No. 1 at 1-3.

scheduled for August 3, 2020 but has been continued on four separate occasions.[4] The deadlines for expert disclosures have been extended multiple times.[5]

Shortly before trial was scheduled to commence on November 8, 2021, U.S. Xpress and Mountain Lake moved in limine to exclude expert testimony from several of Plaintiff's treating physicians and medical providers, arguing that Plaintiff had failed to provide expert disclosures for those witnesses.[6] Specifically, Defendants sought to exclude the testimony of Jenson Bergeron (Licensed Professional Counselor), Dr. David Weir (Neurologist), and Dr. David Muldowney (Orthopedic Surgeon), for failure to comply with the expert disclosure requirements of Fed. R. Civ. P. 26(a)(2).[7] Defendants additionally sought to exclude those portions of the testimony of Larry Stokes (Vocational Lifecare Planner) and John W. Theriot (Economist) that were based upon the foregoing medical expert testimony to which Defendants objected. Prior to issuance of a Ruling on the Motion in Limine, Plaintiff moved to continue the trial in order to allow Plaintiff "to undergo his lumbar-fusion surgery that is scheduled for November 1, 2021 and to testify live at trial."[8] On October 7, 2021, the Court granted the motion to continue, issued a new scheduling order and reset the trial for August 1, 2022.[9] The new scheduling order (which is the scheduling order now in effect) set the deadline for disclosure of Plaintiff's Expert Information/Reports as December 21, 2021; the deadline for Defendants' expert disclosures was set for January 20, 2022.[10]

---

[4] ECF Nos. 10, 24, 45, 52, 65. At the pretrial conference held on July 22, 2022, counsel for Plaintiff moved for a fifth continuance of the trial; the Court denied the motion. ECF No. 94.
[5] ECF Nos. 20, 22, 27, 29, 31.
[6] ECF No. 55.
[7] ECF No. 55-1.
[8] ECF No. 64 at 1.
[9] ECF No. 65.
[10] ECF No. 66 at 2.

Defendants have now filed the pending Motion in Limine, again arguing Mr. Bergeron, Dr. Weir and Dr. Muldowney should be precluded from offering expert testimony at trial. According to Defendants, Plaintiff did not remedy the inadequate disclosures for the witnesses that Defendants identified in their prior motion in limine. Defendants additionally seek to exclude expert testimony from Dr. Shelley Savant, Dr. Stephen Salopek, and Dr. Anthony Blalock due to their untimely and incomplete expert disclosures. Finally, Defendants again move the Court to exclude any testimony from Stokes and Theriot that rely upon any testimony of Plaintiff's healthcare providers that the Court deems inadmissible.

Plaintiff contends Drs. Muldowny, Weir, Savant, Salopek, and Blalock and Mr. Bergeron are all treating healthcare providers. Plaintiff asserts that despite his lack of technical compliance with his expert disclosure obligations, all information that would have been provided in his expert disclosures has been provided to Defendants through his discovery responses, production of medical records, exchange of witness lists, and the February 26, 2020 expert report of Stokes, which Plaintiff contends "includes the physicians' recommendation for Wilfred's future treatment and the cause of his injuries."[11] Plaintiff further asserts Defendants have not been prejudiced, because Defendants have retained their own experts "to refute the extent of all injuries and causation."[12] Finally, Plaintiff argues Defendants have suffered no prejudice because they have deposed Drs. Muldowny, Weir, Henderson, and Stokes, and the depositions of Plaintiff's treating physicians included examination about their causation opinions.[13]

---

[11] ECF No. 83 at 1-2, 9.
[12] *Id.* at 10; *see also id.* at 2.
[13] *Id.* at 2, 9.

## II.
## APPLICABLE LAW

The Federal Rules of Civil Procedure divide potential witnesses into three categories for disclosure purposes. The first group, fact witnesses, are disclosed by providing "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]"[14] The second and third groups consist of expert witnesses. Specifically, the second group consists of "Witnesses Who Must Provide a Written Report," while the third group consists of "Witnesses Who Do Not Provide a Written Report."[15] Regardless of the type of expert, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."[16] The remaining disclosure requirements for the two types of experts are as follows:

> **(B)** *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case. . . . The report must contain:
>
> **(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> **(ii)** the facts or data considered by the witness in forming them;
>
> **(iii)** any exhibits that will be used to summarize or support them;
>
> **(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> **(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

---

[14] Fed. R. Civ. P. 26(a)(1)(A)(i).
[15] *Id.* at 26(a)(2)(B), (C).
[16] *Id.* at 26(a)(2)(A).

>> **(vi)** a statement of the compensation to be paid for the study and testimony in the case.
>
> **(C)** *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
>
>> **(i)** the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>>
>> **(ii)** a summary of the facts and opinions to which the witness is expected to testify.[17]

Thus, for present purposes, the disclosure of a retained expert witness must be accompanied by a detailed, written report, whereas the disclosure requirements for non-retained expert witnesses (sometimes referred to as a "hybrid witnesses") are much less demanding.[18] Although a Rule 26(a)(2)(C) disclosure "need not be extensive," the disclosure should be "an abstract, abridgement, or compendium of the opinion *and* facts supporting the opinion."[19] The purpose of the expert disclosure requirements is to allow both sides to prepare their cases adequately and efficiently, to prepare for effective cross-examination, to arrange for testimony from other experts if necessary, and "to prevent the tactic of surprise from affecting the outcome of the case."[20]

---

[17] *Id.* at 26(a)(2).
[18] *See e.g. Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253 (4th Cir. 2022); *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 360, 370 (7th Cir. 2017).
[19] *Causey v. State Farm Mutual Automobile Ins. Co.*, 2018 WL 2234749 (E.D.La. May 16, 2018) (internal quotation marks omitted) (quoting *Rea v. Wisconsin Coach Lines, Inc.*, 2014 WL 4981803, *5 (E.D.La. Oct. 2, 2014)).
[20] *Lemings v. Taylor*, 2021 WL 2550279, at *4 (M.D. La. June 22, 2021) (quoting *United States v. 9.345 Acres of Land*, 2016 WL 5723665, at *13 (M.D. La. Sept. 30, 2016)); *see also Causey*, 2018 WL 2234749, *2; *Tribble v. Evangelides*, 670 F.3d 753, 759-60 (7th Cir. 2012) ("Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report.")

Treating physicians and other health care professionals typically fall within the third category of witnesses.[21] These hybrid witnesses (*i.e.* those who are not required to provide a Rule 26(a)(2)(B) report) "may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705."[22] Nevertheless, a party who intends to call such a witness must provide the disclosures required under Rule 26(a)(2)(C). If a party fails to comply with the disclosure mandates of Rule 26(a), then "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."[23] The advisory committee notes describe this as "a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion" for sanctions.[24] The United States Court of Appeals for the Fifth Circuit has identified four factors to guide the Court's discretion when determining whether to exclude experts for failure to comply with Rule 26(a): "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."[25] "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."[26]

---

[21] *See e.g.* Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment; *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 739 (9th Cir. 2021).
[22] *See e.g.* Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment; *LaShip, LLC v. Hayward Baker, Inc.*, 680 Fed.Appx. 317, 324 (5th Cir. 2017) ("Rule 26(a)(2)(C) addresses the disclosure of expert witnesses who were involved in the events leading up to litigation and may testify both as an expert and as a fact witness").
[23] Fed. R. Civ. P. 37(c)(1) (authorizing additional or alternative sanctions "on motion").
[24] Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment.
[25] *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).
[26] *Farris v. Jefferson*, 2021 WL 950894, *2 n.12 (quoting *Current v. Atochem N. Am., Inc.*, 2001 WL 36101282, *2 (W.D. Tex. Sept. 18, 2001)); *see also Merchant*, 993 F.3d at 741.

## III.
### ANALYSIS

**A.  Dr. Stephen Salopek**

Defendants state the first disclosure of Dr. Salopek occurred on February 25, 2022 (*i.e.*, after the deadline for each parties' disclosure of expert testimony and after the close of all discovery), when Plaintiff forwarded Dr. Salopek's report and bill to Defendants.[27] Plaintiff identifies Dr. Salopek in the pretrial order as a may-call witness who will testify (in part) as to Plaintiff's "future medical needs, including the need for surgery, if any" and "medical causation."[28] However, in his opposition memorandum, Plaintiff states he saw Dr. Salopek only one time "for assistance with [Plaintiff's] postoperative care" due to Plaintiff's preexisting conditions.[29] Plaintiff then states, "Dr. Salopek is not a treating physician and cannot be excluded pursuant to Rule 26."[30] The Court interprets Plaintiff's latter statement as clarifying that Dr. Salopek will testify solely as a fact witness. Accordingly, Dr. Salopek's testimony will be limited to that of a fact witness.

**B.  Dr. Shelley Savant**

Defendants assert Plaintiff has provided no Rule 26(a)(2) disclosures of any kind in connection with Dr. Savant, who Plaintiff identifies in the pretrial order as a treating physician who will testify (in part) about "future medical needs, including the need for surgery, if any," and "medical causation."[31] The first notice Defendants received that Plaintiff would be treating with Dr. Savant was on February 1, 2022, when Plaintiff's counsel informed Defendants that Plaintiff would be treating with Dr. Savant on February 4, 2022.[32] On April 20, 2022, Plaintiff forwarded

---

[27] ECF No. 75-9.
[28] ECF No. 88 at 23.
[29] ECF No. 83 at 8.
[30] *Id.*
[31] ECF No. 75-1 at 6; ECF No. 88 at 21.
[32] ECF No. 75-1 at 6 (citing ECF No. 75-7 at 1).

Dr. Savant's report (dated February 4, 2022), which was well after the deadline for both parties to provide their expert disclosures.[33] Plaintiff responds that: (1) "Jensen Bergeron referred Wilfred Bradley for psychological evaluation with board certified neurologist Dr. Shelly Savant, who specializes in neurology and psychiatry, for psychological symptoms stemming from this accident";[34] and (2) that Dr. Savant "specifically discusses this collision on Wilfred's <u>first</u> visit dated February 4, 2022, and the symptoms stemming from this accident and his treatment with Dr. Muldowny [sic], Dr. Weir, and Jensen Bergeron, LPC."[35]

As Plaintiff provides no explanation for the untimely and incomplete disclosure of Dr. Savant, no discussion of the importance of the testimony or the potential prejudice in allowing the testimony, and makes no argument showing his failure to provide a complete and timely disclosure was substantially justified or harmless, Dr. Savant's testimony will be limited to that of a fact witness.

**C.     Dr. Anthony Blalock**

Defendants assert Plaintiff has provided no Rule 26(a)(2) disclosure in connection with Dr. Blalock, and that their first notice that Dr. Blalock was treating Plaintiff was on February 1, 2022, when Plaintiff forwarded Dr. Blalock's reports dated December 1, 2021 and January 19, 2022. Plaintiff identifies Dr. Blalock in the pretrial order as a treating nephrologist, who will testify (in part) as to "future medical needs, including the need for surgery, if any" and "medical causation."[36]

---

[33] ECF No. 75-8; ECF No. 66 at 2.
[34] ECF No. 83 at 5 (citing to ECF No. 83-8 at 8) (12/9/2021 progress note of Jensen Bergeron stating, "Counselor and client discussed the potential benefit of further exploration of the client's mental health through a formal psychological evaluation.")
[35] ECF No. 83 at 7-8.
[36] ECF No. 88 at 20.

It appears Plaintiff intends to call Dr. Blalock to testify that this motor vehicle accident caused or worsened Plaintiff's chronic kidney disease.[37] In his opposition memorandum, Plaintiff argues that he "first received Dr. Blalock's initial report on February 1, 2022, which was promptly forwarded to Defendants that same day. Dr. Blalock specifically discusses this motor vehicle accident on Wilfred's first visit dated December 1, 2021, and noted that the symptoms worsened since the accident."[38]

As Plaintiff provides no explanation for the untimely and incomplete disclosure of Dr. Blalock, no discussion of the importance of the testimony or the potential prejudice in allowing the testimony, and makes no argument showing his failure to provide a complete and timely disclosure was substantially justified or harmless, Dr. Blalock's testimony will be limited to that of a fact witness.

**D.  Jenson Bergeron**

Plaintiff identifies Mr. Bergeron in the pretrial order as a treating licensed professional counselor who will testify (in part) as to "future medical needs, including the need for surgery, if any" and "medical causation."[39] According to Defendants, Plaintiff has failed to provide any Rule 26(a)(2) disclosures in connection with Mr. Bergeron in spite of being notified of this issue in Defendants' prior motion in limine.[40] "Instead, Plaintiff has simply circulated Mr. Bergeron's treatment records on a rolling basis."[41] Plaintiff contends he has satisfied his disclosure obligation under Rule 26(a)(2) because Defendants cancelled Mr. Bergeron's 2021 deposition and never rescheduled it.[42] As Defendants note in their reply, after the Court granted Plaintiff's motion for

---

[37] ECF No. 83 at 7.
[38] *Id.*
[39] ECF No. 88 at 20.
[40] ECF No. 75-1 at 4; *see also* ECF No. 55-1 at 3-5.
[41] ECF No. 75-1 at 4.
[42] ECF No. 83 at 4.

continuance of the trial, Defendants anticipated Plaintiff would cure his deficient Rule 26(a)(2) disclosures and Defendants would then reschedule Bergeron's deposition with the benefit of a proper disclosure.[43]

It appears the first notice provided to Defendants that Plaintiff was treating with Jenson Bergeron occurred on July 1, 2021.[44] On that date, Plaintiff forwarded to Defendants medical reports generated by Mr. Bergeron for three treatment sessions occurring in January, February and March of 2021.[45] The cover letter stated Mr. Bergeron's CV was attached, but it was not.[46] To the extent Plaintiff contends his rolling production of Bergeron's treatment records is sufficient to comply with Rule 26(a)(2)(C), the Court disagrees. Plaintiff has not disclosed the subject matter on which Bergeron is expected to present evidence under Federal Rule of Evidence 702, 703 or 705, or a summary of the facts and opinions to which Bergeron is expected to testify.[47] "While medical records undoubtedly touch on the subject matter of a treating physician's testimony, they do not necessarily provide an accurate or complete summary of expected testimony since medical records are not typically created in anticipation that those records would be used as a witness disclosure."[48]

---

[43] ECF No. 89 at 9. Defendants further note they had previously "endured" depositions of Dr. Weir and Dr. Muldowney without the benefit of Rule 26 disclosures, "and those depositions were marred by ever-shifting ground, such as new documents produced mid-deposition with new medical opinions on complex surgical issues." *Id*

[44] *See* ECF No. 55-1 at 4 n.10; *see also* ECF No. 55-5. This disclosure was likewise untimely, as the scheduling order in effect at that time imposed an August 3, 2020 deadline for disclosure of Plaintiff's expert witnesses. *See* ECF Nos. 25, 29.

[45] ECF No. 55-5.

[46] *Id.*; *see also* ECF No. 55-1 at 4 n.10.

[47] Fed. R. Civ. P. 26(a)(2)(C).

[48] *Carrillo v. B & J Andrews Enterprises, LLC*, 2013 WL 394207, at *6 (D. Nev. Jan. 29, 2013); *see also Hooks v. Nationwide Hous. Sys., LLC* 2016 WL 3667134, *5 (E.D. La. July 11, 2016); *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 703 (8th Cir. 2018) (production of medical records does not constitute a "disclosure" under Rule 26(a)(2)(C)); *Goncharenko v. Royal Caribbean Cruises, Ltd.*, 734 Fed.Appx. 645, 647 (7th Cir. 2018) (References to medical records do not satisfy the disclosure obligations of Rule 26(a)(2)(C) and "would invite a party to dump voluminous medical records on the opposing party contrary to the rule's attempt to extract a 'summary.'") (quoting *Jones v. Royal Caribbean Cruises, Ltd.*,

As Plaintiff provides no explanation for the untimely and incomplete disclosure of Mr. Bergeron, no discussion of the importance of the testimony or the potential prejudice in allowing the testimony, and makes no argument showing his failure to provide a complete and timely disclosure was substantially justified or harmless, Mr. Bergeron's testimony will be limited to that of a fact witness.

**E.     Dr. David Weir**

Plaintiff identifies Dr. Weir in the pretrial order as a treating neurologist, who will testify (in part) as to "future medical needs, including the need for surgery, if any" and "medical causation."[49] Defendants move the Court to strike Dr. Weir as a witness, or alternatively, prohibit Dr. Weir "from opining upon medical causation and future medical care," arguing Plaintiff provided no Rule 26(a)(2) disclosures for Dr. Weir, despite Defendants having raised this issue in their prior motion in limine.[50] Defendants additionally argue that because Plaintiff's counsel requested Dr. Muldowney refer Plaintiff to Dr. Weir, Dr. Weir must satisfy the heightened disclosure requirements for retained experts.[51] However, regardless of whether Dr. Weir is deemed a retained or a hybrid expert, Defendants contend Plaintiff has not satisfied his disclosure obligations under Rule 26(a)(2).

---

No. 12-20322-civ, 2013 WL 8695361, *4 (S.D. Fla. Apr. 4, 2013)); *Williams v. State*, 2015 WL 5438596, *3 (M.D. La. Sept. 14, 2015) (collecting cases); *Logan v. Westfield Ins. Co.*, 2020 WL 412216, *7 (W.D. La. Jan. 24, 2020); *Vanderlaan v. Ameriprise Auto and Home Ins.*, 2021 WL 4441518, *7 (D. Colo. Sept. 28, 2021) (collecting cases).
[49] ECF No. 88 at 20.
[50] ECF No. 75 at 1; ECF No. 75-1 at 5; *see also* ECF No. 55-1 at 5.
[51] *Id.* (citing *Tolliver v. U-Haul Co. of Texas*, 2:09 CV 313, 2011 WL 3626328, at *3 (W.D. La. Aug. 17, 2011) ("[W]hen an attorney refers a physician to a client, the physician crosses the line from a treating physician into the realm of a specially retained expert. . . .").

Plaintiff responds that Defendants deposed Dr. Weir on October 8, 2021, and Dr. Weir testified as to "all causation and treatment issues at length."[52] Plaintiff asserts that "Dr. Weir related Wilfred's serious injuries to this incident in his <u>first</u> visit on August 18, 2020."[53] Plaintiff argues he satisfied his disclosure obligations through his initial disclosures, discovery responses, production of medical records, and by providing the expert report of Plaintiff's vocational rehabilitation specialist to Defendants on February 26, 2020 which, according to Plaintiff, "includes the physicians' recommendation for Wilfred's future treatment and the cause of his injuries."[54] Plaintiff additionally argues that Defendants have not been prejudiced, because Defendants have retained their own experts "to refute the extent of all injuries and causation."[55]

The portion of Dr. Weir's notes from his initial consultation with Plaintiff, which Plaintiff relies upon as showing compliance with Rule 26(a)(2), does not set forth any expert opinion testimony, but rather is solely Dr. Weir's "Impression" (*i.e.*, his clinical summation) from that initial consultation, and thus, it is insufficient to comply with Rule 26(a)(2).[56] Likewise, Plaintiff's July 12, 2019 initial disclosures do not satisfy Rule 26(a)(2), as they contain no reference to Dr. Weir.[57] Plaintiff's supplemental discovery responses (sent to Defendants on September 28, 2021—the day Plaintiff's opposition to Defendants' original motion in limine on these issues was due) do not satisfy Rule 26(a)(2), because they provide nothing more than the identification of Dr. Weir as one of Plaintiff's healthcare providers (a fact witness) and his address.[58] As to Plaintiff's rolling production of Dr. Weir's medical records, "disclosures consisting of medical records alone are

---

[52] ECF No. 83 at 4, 6.
[53] *Id.* at 7.
[54] *Id.* at 1-2, 9.
[55] *Id.* at 10; *see also id.* at 2.
[56] ECF No. 83-7 at 3.
[57] ECF No. 83-12.
[58] ECF No. 60-7 at 2, 3.

insufficient to satisfy the disclosure standard of Rule 26(a)(2)(C)."[59] Further, inclusion of Dr. Weir's opinions, as characterized by Stokes in his February 24, 2020 expert report, does not satisfy Rule 26(a)(2)'s disclosure requirements.[60] But even if inclusion of an expert's opinions in the report of a separate expert could satisfy Rule 26(a)(2)(C), it would not in this matter as Stokes' report does not contain "a summary of the facts and opinions to which the witness is expected to testify."[61] Likewise, the fact that Defendants deposed Dr. Weir (in his capacity as a fact witness) does not satisfy Plaintiff's obligation to provide Rule 26(a)(2) disclosures.[62] Had Plaintiff made a proper and timely Rule 26(a)(2) disclosure, Defendants likely would have conducted Dr. Weir's deposition differently, and they would have had the opportunity to have their expert witness incorporate his response to Dr. Weir's expert opinions into his own report.[63]

As Plaintiff provides no explanation for the untimely and incomplete disclosure of Mr. Weir, no discussion of the importance of the testimony or the potential prejudice in allowing the testimony, and makes no argument showing his failure to provide a complete and timely disclosure was substantially justified or harmless, Dr. Weir's testimony will be limited to that of a fact witness.[64]

---

[59] *Hooks, LLC* 2016 WL 3667134, *5; *see also* n.48, *supra*.
[60] *See Cripe v. Henkel Corporation*, 858 F.3d 1110, 1112 (7th Cir. 2017) (attachment of treating physician reports to another expert's report does not satisfy the disclosure requirements of Rule 26).
[61] *See* ECF No. 55-3.
[62] *See e.g. Williams*, 2015 WL 5438596, *3, 5 (Plaintiff's deficient Rule 26(a)(2)(C) disclosure of a treating physician—which consisted solely of the disclosure of medical records—was not cured by the physician's subsequent deposition); *Shepherd v. GeoVera Specialty Ins. Services, Inc.*, 2015 WL 1040452, *2 (E.D. La. March 10, 2015) ("Indeed, if the Court were to permit an expert who submits a deficient report to cure the deficiencies in his deposition, the disclosure requirements of Rule 26 would be rendered meaningless.")
[63] *See e.g. Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757–58 (7th Cir. 2004). For example, Defendants may have inquired into Dr. Muldowney's qualifications and expertise in an effort to lodge a *Daubert* challenge, and they would have had the opportunity to consult with their expert prior to the deposition so that they would have been better prepared to cross-examine Dr. Weir with regard to his expert opinions in this case.
[64] The Court declines to strike all testimony from Dr. Weir for failure to provide an expert report, as requested by Defendants. The case relied upon by Defendants for their argument that a referral to a physician by counsel triggers the heightened report requirements of Rule 26(a)(2)(B), *Toliver*, *supra*, cites

F.   **Dr. David Muldowney**

Defendants move the Court to prohibit all evidence and testimony from Dr. Muldowney addressing "medical causation" and "future medical care" (with the exception of Dr. Muldowney's opinions relating to Plaintiff's cervical injuries) on the grounds that no expert disclosures were provided.[65] Specifically, Defendants argue the following opinions from Dr. Muldowney should be excluded:

1. Plaintiff will require physical assistance in the home post-lumbar surgery—*i.e.*, handyman services, lawn maintenance services and house cleaning services;
2. Plaintiff will need a future adjacent level surgery; and
3. Plaintiff's lumbar issue was caused by the accident sued upon.

It appears Defendants were provided notice of the first two opinions during Dr. Muldowney's April 28, 2021 deposition.[66] The third opinion was apparently set forth in an April 1, 2021 "addendum" that Dr. Muldowney drafted in connection with a February 24, 2021 progress note (*i.e.*, the last time Dr. Muldowney had met with Plaintiff).[67] With regard to this latter opinion, Dr. Muldowney testified at his deposition as follows:

---

*Hall v. Sykes* in support of this statement. 164 F.R.D. 46, 49 (E.D. Va. 1995). However, *Hall* merely states that where an attorney refers a client to a physician, a presumption arises that the physician was selected for expert testimony. Here, a review of Dr. Weir's deposition shows Dr. Weir provided treatment to Plaintiff. *See e.g.* ECF No. 83-6 at 3, 4, 10, 11.

[65] ECF No. 75 at 1; *see also* ECF No. 75-1 at 8. At the pretrial conference held on July 22, 2022, counsel for Defendant clarified he is not challenging Dr. Muldowney's opinions relating to Plaintiff's cervical injuries.

[66] ECF No. 55-1 at 6; ECF No. 83-2 at 14-16. At Dr. Muldowney's deposition, counsel for Plaintiff presented Dr. Muldowney with a document entitled "Summary of Conference," which was prepared by Stokes (Plaintiff's vocational rehabilitation expert), and purports to be a summary of Dr. Muldowney's recommendations as conveyed to Mr. Stokes at a meeting between he and Dr. Muldowney on March 25, 2021. *See* ECF No. 55-4 at 1. Neither counsel for Defendant nor Dr. Muldowney had seen Stokes' summary at the time it was presented by Plaintiff's counsel, as it appears Stokes did not issue the summary until the day prior to Dr. Muldowney's deposition. ECF No. 83-2 at 14-15.

[67] ECF No. 75-1 at 8; *see also* ECF No. 83-2 at 11. Defendants do not state when they were provided with this addendum.

> Q  What was the impetus for that addendum?
>
> A  Well, I was recommending surgery on his lumbar spine and it became apparent that his specific complaints of his lumbar pain did not arise until sometime after his injury, and I basically wanted to look at other records and I got some records – I had some records sent from the emergency room of his initial visit, and then I looked at the patient's explanation that the symptoms had been there since the accident, were overshadowed by his neck symptoms and by the fact that he equated the mid back and the low back together. I formulated an opinion that his low-back pain for which we were recommending surgery was related to his 2/14/18 accident.
>
> Q  And did you speak to anyone other than the patient in between this February 24, 2021, date and the addendum on 4/12/2021, in connection with the prognosis and plan of treatment?
>
> A  I don't recall. I may have spoken with Blake David to request that he get some more records for me or something. I don't recall specifically. . . .
>
> Q  And that would have been to request the emergency room records?
>
> A  Well, just any other records that might help me formulate an opinion as to whether I could relate it to the car accident.[68]

Defendants contend that the three opinions to which they object address matters outside of the scope of Dr. Muldowney's treatment, and further, that his causation opinion relies upon materials generated by other health care providers. As such, Defendants contend Dr. Muldowney is being offered as a traditional expert witness and therefore is required to provide a Rule 26(a)(2)(B) report.[69] In light of the foregoing, Defendants assert Dr. Muldowney should be stricken as a witness. Alternatively, Defendants argue Dr. Muldowney "should be precluded from opining upon

---

[68] ECF No. 83-2 at 12.
[69] Defendants additionally argue that Dr. Muldowney's opinion regarding Plaintiff's future need for an adjacent level surgery is too speculative to present to the jury. In support of this argument, Defendants cite to Stokes' summary of Dr. Muldowney's opinion, which states that Plaintiff "may possibly be a candidate for an adjacent level surgery in the future." ECF No. 75-1 at 7; ECF No. 55-4 at 2. However, at his deposition, Dr. Muldowney testified that in his opinion, it is more probable than not that Plaintiff will need an adjacent level surgery in the future. ECF No. 83-2 at 15-16. As such, the Court declines to grant Defendants' motion on the grounds argued.

causation, and future medical care, including the speculation that Plaintiff 'may possibly be a candidate for an adjacent level surgery in the future.'"[70]

Plaintiff responds that "Defendants have elicited causation and treatment testimony from Dr. Muldowney in his April 29, 2021, deposition," and "Dr. Muldowny [sic] clearly related Wilfred's serious injuries to this incident in his <u>first</u> visit on February 27, 2018."[71] Plaintiff then block quotes from Dr. Muldowney's February 27, 2018 progress note, but the quoted portion of the progress note solely addresses Plaintiff's complaints of neck pain.[72] Plaintiff further responds that his failure to provide Rule 26(a)(2) disclosures is harmless, because he "disclosed that he was being treated by these physicians in discovery responses, through the production of medical records, through the exchange of witness lists, and in forwarding the expert report of Dr. Stokes.[73] Plaintiff additionally argues his failure to comply with Rule 26(a)(2) is harmless, because Defendants have their "own expert who opined as to the recommendations for future care by Wilfred's treating physicians."[74] Finally, Plaintiff contends any failure to provide Rule 26 disclosures is harmless, because "Plaintiff complied with Rule 26's requirements with the initial disclosures on July 19, 2019, and will be exchanging additional disclosures this week in preparation of the joint pre-trial order."[75]

The progress note from Plaintiff's first visit with Dr. Muldowney does not provide notice to Defendants of Dr. Muldowney's opinions that Plaintiff would need physical assistance at home following lumbar surgery, that Plaintiff would likely need an adjacent level surgery in the future, or that Plaintiff's lumbar issue was caused by the accident sued upon, as Dr. Muldowney had not

---

[70] ECF No. 75-1 at 8.
[71] ECF No. 83 at 6.
[72] *Id.*
[73] *Id.* at 1-2.
[74] *Id.* at 2.
[75] *Id.* at 9.

formed those opinions at that time.[76] Likewise, Plaintiff's July 12, 2019 initial disclosures do not satisfy Rule 26, because they were drafted before Dr. Muldowney diagnosed Plaintiff with lumbar issues.[77] As to Plaintiff's discovery responses, Plaintiff attaches his "Supplemental Answers to Interrogatories" that he sent to Defendants on September 28, 2021.[78] However, the supplemental discovery response does not comply with Rule 26(a)(2), as it provides nothing more than the identification of Dr. Muldowney as one of Plaintiff's healthcare providers (a fact witness) and his address.[79] As to Plaintiff's rolling production of Dr. Muldowney's medical records, "disclosures consisting of medical records alone are insufficient to satisfy the disclosure standard of Rule 26(a)(2)(C)."[80] Further, inclusion of Dr. Muldowney's opinions, as characterized by Stokes in Stokes' February 24, 2020 life care plan, does not satisfy Rule 26's disclosure requirements.[81] But even if inclusion of an expert's opinions in the report of a separate expert could satisfy Rule 26(a)(2)(C), it does not in this matter as Stokes' report does not provide "a summary of the facts and opinions to which the witness is expected to testify."[82] Likewise, the fact Defendants deposed Dr. Muldowney (in his capacity as a fact witness) does not satisfy Plaintiff's obligation to provide Rule 26(a)(2) disclosures.[83] Had Plaintiff made a proper and timely Rule 26(a)(2) disclosure, Defendants likely would have conducted Dr. Muldowney's deposition differently, and they would

---

[76] *See* ECF No. 83-3. It appears Dr. Muldowney began to suspect Plaintiff was having lumbar issues (as opposed to thoracic issues) in December of 2020. ECF No. 83-2 at 10. Plaintiff had an MRI of his low back on January 4, 2021. *Id.* On April 1, 2021, Dr. Muldowney drafted the addendum to his February 24, 2021 report, wherein he first expressed his opinion that Plaintiff's lower back pain was causally related to the accident sued upon. *Id.* Dr. Muldowney was deposed on April 29, 2021. *Id.* at 1. The Court is unaware of when the addendum was provided to Defendants.
[77] *See* ECF No. 83-12. Furthermore, the initial disclosures disclose only the name and address of Plaintiff's treating physicians.
[78] ECF No. 60-7.
[79] *Id.* at 2, 3.
[80] *Hooks*, 2016 WL 3667134, *5; *see also* note 48, *supra*.
[81] *See Cripe*, 858 F.3d at 1112.
[82] *See* ECF No. 55-4; *see also* ECF No. 83-1.
[83] *See e.g. Williams*, 2015 WL 5438596, *3, 5; *Shepherd*, 2015 WL 1040452, *2.

have had the opportunity to have their expert witness incorporate his response to Dr. Muldowney's expert opinions into his own report.[84] Finally, production of previously undisclosed opinions in the middle of a witness's deposition does not comply with Rule 26(a)(2)'s disclosure requirements. "Litigants should not have to guess who will offer expert testimony; they need knowledge to conduct their own discovery and proffer responsive experts. That's why failure to comply with Rule 26(a)(2)(A) leads to the exclusion of expert testimony by a witness not identified as an expert."[85]

Here, Plaintiff provides no explanation for the untimely and incomplete disclosure of Dr. Muldowney, no discussion of the importance of the testimony or the potential prejudice in allowing the testimony, and makes no argument showing his failure to provide a complete and timely disclosure was substantially justified or harmless. Nevertheless, the Court finds Defendants have not shown sufficient prejudice to warrant the relief requested. At Dr. Muldowney's April 28, 2021 deposition, after Plaintiff's counsel presented the Larry Stokes' summary of Dr. Muldowney's opinions, counsel for Defendants objected and reserved his right to re-depose Dr. Muldowney.[86] At the time of the deposition, trial was set on November 8, 2021.[87] On October 7, 2021, trial was reset for August 1, 2022, and the deadline for discovery completion was reset for February 22, 2022.[88] However, Defendants never re-deposed Dr. Muldowney, nor did they seek to compel Plaintiff to provide a complete Rule 26(a)(2) disclosure. Under these facts and given the importance of this testimony, the Court declines to limit the testimony of Dr. Muldowney.

---

[84] *See e.g. Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757–58 (7th Cir. 2004).
[85] *Cripe*, 858 F.3d at 1112.
[86] ECF No. 83-2 at 16-17.
[87] ECF No. 52.
[88] ECF No. 65.

### G.     Dr. Larry Stokes and John W. Theriot

In light of the Court's exclusion of expert testimony from those healthcare providers addressed above, the testimony of Larry Stokes (Plaintiff's vocational rehabilitation and lifecare planning expert) and John Theriot (Plaintiff's expert economist) must be conformed and limited to existing lay medical opinions.

## IV.
### CONCLUSION

For the reasons set forth above, the Motion in Limine filed by Defendants Mountain Lake Risk Retention Group, Inc. and U.S. Xpress, Inc. is GRANTED IN PART, and all healthcare providers addressed in this Ruling other than Dr. Muldowney will be prohibited from presenting evidence under Federal Rule of Evidence 702, 703, or 705 and will be limited to presenting lay testimony only. Further, Plaintiff's vocational rehabilitation expert and economist must conform and limit their testimony to existing lay medical opinions.

THUS DONE in Chambers on this 29th day of July, 2022.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE